## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | 06-342-1 |
| | : | |
| KHALIL CARTER | : | CIVIL ACTION |
| | : | 14-3396 |

January **2⨉**, 2015                                         **Anita B. Brody, J.**

### MEMORANDUM

Currently before me is Khalil Carter's pro se Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence.  For the reasons set forth below, I will deny Carter's § 2255

motion.

## I. BACKGROUND

### A. This Court Sentences Carter to 37 Months' Imprisonment for Violating his Supervised Release

The Third Circuit has aptly summarized the events surrounding this Court's sentencing of

Khalil Carter to 37 months' imprisonment for violating his supervised release as follows:

> In May 2008, Appellant Khalil Carter pled guilty to federal charges for
> conspiracy to use and produce counterfeit credit cards and armed robbery of a
> pharmacy. These convictions resulted in a United States Sentencing Guidelines
> ("U.S.S.G.") range of 121 to 130 months' imprisonment. Nonetheless, the District
> Court exercised its discretion to sentence Carter to only 45 months' imprisonment
> followed by three years' supervised release. Carter began supervised release in
> November 2009.
>     The United States Probation Office filed a petition for revocation of
> supervised release in November 2011 based on two incidents. In June 2010, the
> thirteen-year-old daughter of Carter's girlfriend complained that Carter had
> sexually assaulted her. Carter pled guilty in state court to misdemeanors for
> endangering the welfare of a child and corruption of a minor. 18 Pa. Cons.Stat.
> Ann. §§ 4304, 6301. He was sentenced to five years' probation. Second, in
> October 2011 Carter was arrested for attempting to use stolen credit cards. He
> pled guilty to access device fraud and was sentenced to 9 to 23 months'
> imprisonment. *Id.* § 4106.

In revoking Carter's supervised release, the District Court calculated the applicable range of imprisonment. *See* U.S.S.G. § 7B1.4 (2011). To do so, it needed to determine whether Carter had committed a Grade A or Grade B violation of his release—a significant distinction, as a Grade B violation would result in a Guidelines range of 6 to 12 months', while a Grade A violation would raise the range to 27 to 33 months' imprisonment. Both parties agreed that the credit card fraud constituted a Grade B violation of Carter's supervised release. The Government, however, argued that the June 2010 sexual assault was a more serious Grade A violation because it was a "crime of violence" as a "forcible sex offense," pointing to evidence of Carter's actual conduct. Carter, however, testified that he never touched the girl and that he never pled to doing so.

After an initial revocation hearing, the Court held a subsequent hearing in September 2012 to consider the nature of Carter's plea and the underlying facts of the case. Evidence included the victim's statement, Carter's guilty plea transcript, a toxicology report, testimony by the victim's mother, and an oral statement by Carter. The Court credited the mother's testimony, which indicated that Carter had taken the girl out to dinner, provided her with alcohol, made inappropriate comments, and touched her genitals while she pretended to be asleep.

On that evidence, the District Court concluded that Carter's conduct amounted to a forcible sexual offense, classifying it as a "crime of violence" under the Guidelines and a Grade A violation of supervised release. It further explained that it was "outrageous" that Carter gave the underage victim alcohol, and was similarly disappointed that Carter had committed credit card fraud while on supervised release for that same offense. . . . Observing that Carter had abused the "break" he had been given on his initial sentence, the Court sentenced him to 37 months' imprisonment—four months above the Guidelines range for a Grade A offense—to run consecutively to any state sentence, and explained that it would have imposed the same sentence regardless whether the sexual assault was a Grade A or B violation.

*United States v. Carter*, 730 F.3d 187, 189-90 (3d Cir. 2013) (footnotes omitted).

## B. Carter Appeals his Sentence

On appeal, Carter argued that because he had not been charged or convicted of a Grade A

offense for the June 2010 sexual assault, this Court improperly categorized it as a Grade A

violation. Carter argued that this Court was limited to the actual charges or convictions in

determining the grade of the violation and had impermissibly considered his actual conduct to

conclude that he had committed a Grade A violation. Thus, he contended that the improper

categorization of his offense as a Grade A violation rather than a Grade B violation led to an

incorrect Guidelines range and a procedurally unreasonable sentence. *Id.* at 190.

The Third Circuit held that "the District Court was entitled to rely on the facts presented

at the revocation hearing in analyzing the nature of Carter's violation, and was not limited by the

charges filed or offenses of conviction." *Id.* at 192. Thus, "[a] district court may consider a

defendant's actual conduct when determining—by a preponderance of evidence—whether that

defendant violated the terms of his release by breaking the law. In doing so, the court must point

to a provision of law that has been broken." *Id.* at 194. Although this court was entitled to

consider Carter's actual conduct, the Third Circuit held that this Court had committed error by

failing to determine the specific Grade A offense Carter had committed based on his actual

conduct. *Id.* at 193. The Third Circuit, however, held that this error was harmless because this

Court was aware of the difference in Guidelines range between a Grade A violation (27 to 33

months) and Grade B violation (6 to 12 months) and chose to impose a 37 month sentence

regardless of whether the sexual assault was a Grade A or B violation. *Id.* at 193-94. The Third

Circuit concluded that this Court's decision to depart upward from both ranges was not an abuse

of discretion because it was based on the following facts: "Carter had committed the same sort of

credit card fraud for which he was serving supervised release, had given his underage victim

alcohol, and had abused the leniency shown by the Court at his initial sentencing." *Id.* at 194.

Thus, the Third Circuit affirmed Carter's sentence of 37 months' imprisonment. *Id.*

## II. STANDARD OF REVIEW

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was

imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a

party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and

shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may

appear appropriate." *Id.* § 2255(b). A petitioner is entitled to an evidentiary hearing unless the

motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.[1]  *Id.*

## III. DISCUSSION

### A. Claims that Do Not Raise a Constitutional Violation or Fundamental Statutory Defect

"Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." *United States v. Cepero*, 224 F.3d 256, 267 (3d Cir. 2000) *abrogated on other grounds by Gonzalez v. Thaler*, 132 S. Ct. 641 (2012). Moreover, they may not be used to relitigate issues decided adversely on appeal. *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985).

Carter brings many claims that do not raise a constitutional violation or fundamental statutory defect. Additionally, Carter previously raised some of these claims on appeal and they have already been adversely decided by The Third Circuit. None of these claims are cognizable in federal habeas review, and even if they were, they lack merit.

Carter argues that this Court should not have categorized the June 2010 sexual assault as a Grade A violation because he was not charged or convicted of a Grade A offense. Thus, Carter contends that his sentence is procedurally unreasonable because this Court impermissibly sentenced him based on evidence presented at the September 2012 revocation hearing and the Court's "feelings and emotions." ECF No. 74 at 10. Carter has already litigated and lost this argument. The Third Circuit held on direct appeal that this Court "was entitled to rely on the facts presented at the revocation hearing in analyzing the nature of Carter's violation, and was not limited by the charges filed or offenses of conviction." *Carter*, 730 F.3d at 192. Additionally,

---

[1] Carter is not entitled to an evidentiary hearing because the motion, exhibits, and records conclusively establish that his claims are not meritorious.

the Third Circuit concluded that even though this Court failed to specifically name the "crime of violence" that Carter had committed in order for the sexual assault to qualify as a Grade A violation, "the error here was harmless because the District Court explained that it would have ordered the same sentence even without finding a 'crime of violence.'" *Id.* at 193. Finally, the Third Circuit held that this Court did not abuse its discretion in sentencing Carter to 37 months' imprisonment because the sentence was based on the following facts: "Carter had committed the same sort of credit card fraud for which he was serving supervised release, had given his underage victim alcohol, and had abused the leniency shown by the Court at his initial sentencing." *Id.* at 194. Thus, the sentence reached by the Court was properly based on evidence presented during the September 2012 revocation hearing, and not on the Court's emotions. Carter is not entitled to relief on these grounds.

Carter also argues that his probation officer should have advised this Court that the victim's mother continued to be intimately involved with Carter after the sexual assault of her daughter, and based on the continued intimacy, this Court should not have found the testimony of the victim's mother to be credible. At the initial revocation hearing, however, the probation officer did inform the Court of the mother's continued contact with Carter after the sexual assault, and the mother testified to this ongoing relationship at the subsequent revocation hearing. The Court was able to consider evidence of the ongoing relationship, as well as all of the other evidence presented, in determining the credibility of the mother's testimony. Carter is not entitled to relief on these grounds.

During her testimony, the victim's mother incriminated herself under oath by testifying that she knowingly received items from Carter that were purchased with stolen credit cards. Carter contends that the Court could not find the mother's testimony to be credible because she

5

had incriminated herself. Carter points to no rule that self-incrimination destroys a witness'
credibility. While the self-incriminating testimony could undermine the witness' credibility
because she accepted items purchased with stolen credit cards, it also could bolster her
credibility by demonstrating that she was willing to testify truthfully even if her testimony was
self-incriminating. Carter is not entitled to relief on this ground.

At the initial revocation hearing, the probation officer and the prosecutor told this Court
that they believed that the rape kit established that the victim had been penetrated when in fact
the rape kit indicated no evidence of penetration. However, at that same revocation hearing, this
Court acknowledged that the rape kit could not have indicated penetration because no sexual
intercourse occurred. Additionally, at the subsequent revocation hearing, the prosecutor
informed the Court that there was no physical evidence of the sexual assault. Carter argues,
however, that the prosecutor and probation officer perpetrated a fraud on the court when they
stated that the rape kit had produced evidence of penetration. Additionally, Carter argues that
the mother's self-incriminating testimony was also a fraud on the court.

In order to establish a fraud on the court, a defendant must establish: (1) an intentional
fraud; (2) committed by an officer of the court; (3) that is directed at the court itself; and (4)
actually deceives the court. *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005). No
fraud on the court occurred because the Court was aware that the rape kit did not indicate
penetration and that the victim's mother had incriminated herself on the stand. Thus, this Court
was never in fact deceived. Carter is not entitled to relief on these grounds.

Carter also contends that he is actually innocent of the sexual assault. As proof of his
innocence, he attaches the Sexual Assault Evaluation performed on the victim at Children's
Hospital of Philadelphia. The Supreme Court has never recognized a freestanding actual

6

innocence claim. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993). Moreover, even if actual

innocence is a viable claim, Carter cannot succeed because he has not presented evidence of his

innocence. According to the Sexual Assault Evaluation, the victim "disclosed a history of

genital touching. She had a normal examination including a normal anogenital exam, which is

*consistent with the disclosed history*." ECF. No. 78 (emphasis added). Thus, the Sexual Assault

Evaluation does not prove that Carter is actually innocence of touching the child's genitals.

Carter is not entitled to relief on this ground.

## B. Claims Alleging a Constitutional Violation

Carter also raises the following constitutional claims: (1) defense counsel rendered

ineffective assistance of counsel in violation of the Sixth Amendment by failing to object to the

testimony of the victim's mother once she had incriminated herself; (2) the length of the sentence

violates the Eighth Amendment's prohibition on cruel and unusual punishment; and (3) the

sentence violates the due process clause of the Fifth Amendment because it is outside the

Guidelines range.

### 1. Sixth Amendment Ineffective Assistance of Counsel

Carter contends that he is entitled to relief because counsel rendered ineffective

assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court

established the legal framework for determining Sixth Amendment claims of ineffective

assistance of counsel. *Strickland* sets forth a two-part test for claims of ineffective assistance of

counsel:

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Under *Strickland*'s first prong, a court must determine whether, in

light of all the circumstances, the identified acts or omissions of counsel were outside the range

of professionally competent assistance." *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013).  A

court's evaluation of an attorney's performance must be "highly deferential." *Strickland*, 466

U.S. at 689.  "A fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

(internal quotation marks omitted). The second prong of *Strickland*, prejudice, requires a

petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694.

　　Carter alleges that counsel was ineffective for failing to object to testimony of the

victim's mother once she had incriminated herself by admitting that she had knowingly received

items from Carter that were purchased with stolen credit cards.  Carter provides no basis for

counsel to have objected to this testimony.  Additionally, counsel may have chosen not to object

to this testimony because he believed it was favorable to the defense as a means to undermine the

credibility of the witness.  Thus, there is no evidence that counsel's performance was deficient.

Moreover, Carter has not demonstrated how testimony that the mother knowingly accepted

stolen goods prejudiced him.  Carter is not entitled to relief on this ground.

## 2. Eighth Amendment Cruel and Unusual Punishment

Carter argues that his sentence of 37 months' imprisonment violates the Eighth Amendment's prohibition on cruel and unusual punishment because it is grossly disproportionate to the offenses that he committed. The Supreme Court has recognized that "[t]he Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)). "Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 290 (1983). "Although the proportionality principle applies to sentences for terms of years, only an extraordinary case will result in a constitutional violation." *United States v. Walker*, 473 F.3d 71, 79 (3d Cir. 2007).

The following three factors guide the determination of whether a sentence is so disproportionate that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 463 U.S. at 292. The first factor serves as a threshold determination—if a defendant cannot establish the first factor then the analysis ends. *United States v. MacEwan*, 445 F.3d 237, 248 (3d Cir. 2006).

To meet the first proportionality factor, a defendant must establish that the sentence is "grossly disproportionate to the crime." *Id.* (internal quotation marks omitted). "[S]uccessful challenges to the proportionality of particular sentences [are] exceedingly rare." *Ewing*, 538

9

U.S. at 22 (internal quotation marks omitted). For instance, in *Rummel v. Estelle*, the Supreme Court upheld a life sentence for a defendant convicted under a three-strikes law, where his third conviction was obtaining $120.75 by false pretenses, and his two prior fraud felonies involved illegally obtaining $80 and $28.36, respectively. 445 U.S. 263, 265-66, 285.

Here, Carter's sentence was based on the commission of two separate crimes while on supervised release—the sexual assault of a minor and credit card fraud. Carter's sentence of 37 months' imprisonment was well within the legislatively authorized sentence of up to five years' imprisonment. *See* 18 U.S.C. § 3583(e)(3). In reaching the sentence, this Court considered Carter's actual conduct, which included providing alcohol to a minor and then sexually assaulting her, and committing the same crime he was originally imprisoned for—credit card fraud—while on supervised release. Carter's sentence is anything but extraordinary. Rather it is plainly appropriate based on the offenses committed. Cases like *Rummel* make it crystal clear that Carter's sentence is not grossly disproportionate to the crimes he committed. Thus, his Eighth Amendment challenge necessarily fails. Carter is not entitled to relief on this ground.

## C. Fifth Amendment Due Process

Lastly, Carter argues that his sentence outside the Guidelines range violates due process. The Supreme Court, however, has held: "Any expectation subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive our decision in *United States v. Booker*, 543 U.S. 220 (2005), which invalidated the mandatory features of the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 714 (2008). Thus, Carter's sentence outside the Guidelines range does not violate due process. Carter is not entitled to relief on this ground.

## IV. CONCLUSION

For the reasons set forth above, I will deny Carter's pro se Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence. A certificate of appealability will not issue.[2]

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on  _01-28-2015_ to:
                                     KhALiL  CARTER, PCH.

_____

[2] Under AEDPA, a certificate of appealability may not issue unless "the applicant has made a
substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "Where a
district court has rejected the constitutional claims on the merits, the showing required to satisfy §
2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the
district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,
529 U.S. 473, 484 (2000). Carter has not shown that reasonable jurists would find this Court's
assessment of his constitutional claims debatable or wrong.